# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **LENIL COLBERT, CONSTANCE GRAY, ERNEST REEVES, KENYA LYLES,** and **DWIGHT SCOTT,** for themselves and all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) No. 07 C 4737 |
| | ) Judge Joan H. Lefkow |
| **ROD R. BLAGOJEVICH,** in his official capacity as Governor of the State of Illinois; **CAROL L. ADAMS,** in her official capacity as Secretary of the Illinois Department of Human Services; **BARRY S. MARAM,** in his official capacity as Director of the Illinois Department of Healthcare and Family Services; and **ERIC E. WHITAKER, M.D.,** in his official capacity as Director of the Illinois Department of Public Health, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This putative class action was brought by five Medicaid-eligible individuals who allege that Illinois officials have violated portions of the Americans with Disabilities Act, the Rehabilitation Act of 1973, the Social Security Act, and the Nursing Home Reform Act by failing to adequately provide them with long-term care services in an integrated, community setting. Before the court is plaintiffs' motion for class certification pursuant to Rules 23(b)(2) and 23(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion [#9] is granted.

## BACKGROUND

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibit public entities from discriminating against individuals with disabilities in providing public services, programs, or activities. The ADA instructs the Attorney General to issue regulations implementing Title II's discrimination prohibitions. 42 U.S.C. § 12134(a). One such regulation mandates that a public entity "administer . . . programs . . . in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). Additionally, in construing the anti-discrimination provisions of the ADA, the Supreme Court has held that disabled individuals should be placed in community settings, rather than state institutions, provided the following conditions are met: the state's treatment professionals have determined that community placement is appropriate; the transfer out of institutional care is not opposed by the affected individual; and the placement can be reasonably accommodated, taking into account the available state resources and the needs of others with disabilities. *Olmstead* v. *L.C.*, 527 U.S. 581, 587, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999).

The five named plaintiffs in this case are Medicaid-eligible Cook County, Illinois residents with disabilities. All plaintiffs are, or were at the time of filing, housed in private nursing facilities that receive state and federal funding. If given the appropriate services, plaintiffs allege that they, and others similarly situated, are capable of living in their own homes or apartments. They assert, however, that despite their ability and desire to live in the community, defendants have failed to adequately provide them with an opportunity to live outside of an institutionalized setting, in violation of the ADA, 42 U.S.C. § 12132, the

Rehabilitation Act of 1973, 29 U.S.C. 794(a), the Social Security Act, 42 U.S.C. §§ 1396–1396v, and the Nursing Reform Act, 42 U.S.C. § 1396a(a)(28)(A).

The four defendants, all sued in their official capacities, are the Governor of the State of Illinois, the Secretary of the Illinois Department of Human Services, the Director of the Illinois Department of Healthcare and Family Services, and the Director of the Illinois Department of Public Health. Plaintiffs seek injunctive relief that would require defendants to (1) inform individuals with disabilities that they may be eligible for community-based services and have the choice of such services, (2) regularly provide assessments to determine eligibility for community-based services, and (3) promptly provide appropriate services and support to qualifying individuals in the community, creating a viable alternative to treatment in institutional settings. Pls.' Compl. at 26.

Plaintiffs have moved pursuant to Rules 23(b)(2) and 23(c) for an order certifying this case as a class action. They seek to certify the following class: all Medicaid-eligible adults with disabilities in Cook County, Illinois, who are being, or may in the future be, unnecessarily confined to nursing facilities and who, with appropriate supports and services, may be able to live in a community setting. Pls.' Compl. ¶ 71.

## CLASS CERTIFICATION STANDARD

A party seeking to certify a class action must meet two conditions. First, the movant must show the putative class satisfies the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *Oshana* v. *Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Rosario* v. *Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Second, the action must qualify under at least one of the three subsections of

3

Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario*, 963 F.2d at 1017; *Hardin* v. *Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993). Here, plaintiffs seek certification under Rule 23(b)(2), which requires a finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Courts retain broad discretion in determining whether a proposed class meets the Rule 23 certification requirements. *Keele* v. *Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). While the requirements of Rule 23 should be liberally construed to support the policy favoring the maintenance of class actions, *King* v. *Kansas City S. Indus.*, 519 F.2d 20, 25–26 (7th Cir. 1975), the moving party bears the burden of showing that the requirements for class certification have been met. *Hardin*, 814 F. Supp. at 706.

## DISCUSSION

### A. Definiteness

Before turning to the explicit requirements of Rule 23, defendants argue that plaintiffs' motion should be denied because the proposed class is too indefinite to support class certification. A class is sufficiently definite if membership can be ascertained by reference to objective criteria. *Wallace* v. *Chicago Housing Authority*, 224 F.R.D. 420, 425 (N.D. Ill. 2004) (citing *Gomez* v. *Ill. State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill.1987)). If the class definition would require the court to conduct individualized inquiries into each potential class member's claims, the definition is deficient. *Lau* v. *Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007).

4

Defendants contend that the proposed class definition fails because (1) the term "Medicaid-eligible adults with disabilities" is too broad; (2) the services that plaintiffs are allegedly being denied are not explicitly identified; and (3) the relief sought by plaintiffs is too vague. To some extent, however, it seems that defendants misunderstand the definiteness requirement, the class definition proposed, and the relief sought by plaintiffs. Determining if an adult is Medicaid-eligible or disabled is objectively established by reference to the regulations promulgated pursuant to the ADA and the Social Security Act. The only definiteness issue that could be challenged, then, is this: would the proposed class definition require the court to assess whether each class member may be able, with the appropriate supports and services, to live in the community?

In two recent decisions on motions for class certification in which the plaintiffs had proposed class definitions similar to that proposed here, courts in this district answered this question with a resounding "no." *See Ligas* v. *Blagojevich*, No. 05 C 4331, 2006 U.S. Dist. LEXIS 10856, at *16–17 (N.D. Ill. Mar. 7, 2006); *Williams* v. *Blagojevich*, No. 05 C 4673, 2006 U.S. Dist. LEXIS 83537, at *13–15 (N.D. Ill. Nov. 13, 2006). In each of those cases, the named plaintiffs sought to enjoin defendants to create a set of objective criteria against which all class members would be regularly assessed to determine their eligibility for community-based care. *See Ligas*, 2006 U.S. Dist. LEXIS 10856, at *5–6; *Williams*, 2006 U.S. Dist. LEXIS 83537, at *6. The class proposed in *Ligas* consisted of "[a]ll persons in Illinois with disabilities who (1) have mental retardation and/or other developmental disabilities and who qualify for long-term care services; (2) with appropriate supports and services, could live in the community and who would not oppose community placement; and (3) either are institutionalized in private

5

[intermediate care facilities for persons with developmental disabilities] . . . or are living in a home-based setting and are at risk for institutionalization because of their need for services." 2006 U.S. Dist. LEXIS 10856, at *7–8. In rejecting the defendants' contention that the proposed class was too indefinite because the court would have to make individual determinations about class membership, the court stated,

> In essence, the plaintiffs are willing to have the defendants make these determinations based on reasonable assessments from their own state treatment professionals in accordance with *Olmstead*. Because the defendants would be evaluating based on their own criteria whether a potential class member would meet the state's requirements and thus the class definition, [the] court could order the defendants to engage in individual determinations should any relief be granted and not do so itself.

*Id*. at *16–17 (citation omitted). The court in *Williams* employed a similar line of reasoning in rejecting a nearly identical argument by the defendants. *See* 2006 U.S. Dist. LEXIS 83537, at *14–15 ("[I]t is unnecessary to make qualification for community placement a requirement for membership in the class. It is sufficient to define class members as persons who, with appropriate support and services, may be able to live in an integrated community setting.").

Plaintiffs in this case likewise seek to enjoin defendants to create a set of objective criteria against which all proposed class members will be regularly assessed for their eligibility for community placement. Should plaintiffs ultimately succeed, *defendants*—not the court—will need to determine, based on reasonable assessments by their own state treatment professionals, what type of community-based long-term services it would be administratively feasible for the state to supply each class member. The specific contours of the criteria to be used by defendants in making their assessments are not at issue; rather, plaintiffs object to the lack of any systematic criteria whatsoever. Defendants' concerns as to the particular types of community-based

6

services they may be required to provide, and to what extent those services may include housing assistance, are therefore more properly addressed at a later stage of this litigation.

Defendants also argue that the class definition is too broad because it may overlap in part with the classes in *Ligas* and *Williams*. Although the classes in those cases are strikingly similar to that proposed here, the class members in *Ligas* and *Williams* are (or are at risk of) being institutionalized in intermediate care facilities for persons with developmental disabilities ("ICF-DDs") or institutions for mental disease ("IMDs"), respectively—not nursing facilities, as in the present case. *See Ligas*, 2006 U.S. Dist. LEXIS 10856, at *6; *Williams*, 2006 U.S. Dist. LEXIS 83537, at *4–5. The proposed class, therefore, does not fail for lack of definiteness.

## B. Rule 23(a) Requirements

### 1. Numerosity

Numerosity, the first prerequisite for class certification under Rule 23(a), requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticable' does not mean 'impossible,' but rather, extremely difficult and inconvenient." *Fields* v. *Maram*, No. 04 C 0174, 2004 WL 1879997, at *3 (N.D. Ill. Aug. 17, 2004) (quoting *Danis* v. *USN Communications, Inc.*, 189 F.R.D. 391, 399 (N.D. Ill. 1999)). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *See Swanson* v. *Am. Consumer Indus.*, *Inc.*, 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969). In determining whether joinder is impracticable, the court considers not only the size of the class, but also the geographic dispersion of its members, the nature of relief sought, and the ability of the litigants to press their own claims. *Murray* v. *E*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006); *Rosario* v. *Cook County*, 101 F.R.D. 659, 661 (N.D. Ill. 1983).

Defendants do not deny that plaintiffs have met the numerosity requirement. There are currently over 20,000 Medicaid-eligible individuals with disabilities living in Cook County nursing facilities. Pls.' Compl. ¶ 72. Based on estimates from the Centers for Medicare and Medicaid Services, plaintiffs allege that more than 7,000 of these residents have expressed a preference to live in the community rather than in a nursing facility. *Id.* In addition, it is likely that, as Medicaid recipients, many of these individuals lack the financial means to bring individual lawsuits. *Id.*; *see also McCabe* v. *Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002) ("[T]he Court is able to make common-sense assumptions in determining numerosity.") (internal quotation marks omitted). Because it would be impracticable and inconvenient to join all potential class members in this case, the court finds that the numerosity requirement has been satisfied.

### 2. Commonality

The commonality requirement mandates that "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2); *Keele*, 149 F.3d at 594. It has been characterized as "a 'low hurdle' easily surmounted." *Scholes* v. *Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele*, 149 F.3d at 594 (internal quotation marks and citation omitted); *Rosario*, 963 F.2d at 1018; *see also Tylka* v. *Gerber Prods. Co.*, 178 F.R.D. 493, 496 (N.D. Ill. 1998) (noting that if at least one question of law or fact is common to the class, then commonality is satisfied). A common nucleus exists where the class members' claims hinge on the same conduct by the defendants. *Tylka*, 178 F.R.D. at 496.

8

Defendants challenge the ability of the proposed class to satisfy the commonality requirement. Defendants' primary argument is that the broad class definition proposed by plaintiffs is too factually diverse for commonality between class members to exist. According to defendants, the court will need to make individual determinations about class membership for every proposed class member, thereby defeating commonality. They further argue that the evaluations currently conducted by nursing facilities "to determine progress and advancement towards discharge" are sufficient to show that plaintiffs have not been damaged as alleged. Defs.' Mem. in Opposition to Pls.' Mot. ("Defs.' Resp.") at 10.

In challenging the commonality of the proposed class, defendants rely primarily on two cases, *Metcalf* v. *Edelman*, 64 F.R.D. 407 (N.D. Ill. 1974), and *Fuzie* v. *Manor Care, Inc.*, 461 F. Supp. 689 (N.D. Ohio 1977). The plaintiffs in *Metcalf* claimed that they were unable to obtain adequate housing under the state's existing shelter system. *Metcalf*, 64 F.R.D. at 408. The court found that the proposed class did not meet the commonality requirement because it would have required the court to adjudicate that each putative class member was unable to find housing "*because* such plaintiff was not granted a shelter exception" under the state's shelter system. *Id.* at 409 (emphasis added). In other words, the proposed class definition would have required the court to make separate inquiries into the facts surrounding each individual class members' claims. *See id.* at 409–10. Similarly, the proposed class in *Fuzie* failed to meet the commonality requirement because the court would have had to decide that each putative class member was illegally discharged from the private nursing facility sued in the case *because* the plaintiff was a Medicaid recipient. *See* 461 F. Supp. at 700 (citing *Metcalf*, 64 F.R.D. at 409).

9

The bar to class certification in *Metcalf* and *Fuzie* is not present in this case. As discussed above, plaintiffs seek to require defendants to enact standardized policies and procedures for placing eligible disabled individuals in the community. Unlike the plaintiffs in *Metcalf* and *Fuzie*, plaintiffs do not assert that an existing system, poorly administered on a case-by-case basis, is causing the harm alleged; rather, the claimed injury flows from the lack of any community placement procedure at all. The claims of the proposed class members raise common questions with respect to defendants' alleged failures in this regard: Do defendants systematically (1) "ensure that comprehensive, appropriate assessments . . . are conducted to determine whether class members require institutionalization," (2) "inform [p]laintiffs and class members of community-based long-term care alternatives," and (3) "provide . . . community long-term care services with reasonable promptness?" Mem. in Supp. of Pl.'s Mot. to Maintain a Class Action ("Pls.' Mot. Mem.") at 5–6. While defendants argue that the different medical issues, treatment options, and placement histories affecting each plaintiff prevent the court from finding a common answer to these questions, the factual variations identified relate "to the level of injury suffered and not [to] whether the defendants' conduct was sufficient[ly] standardized." *Ligas*, 2006 U.S. Dist. LEXIS 10856, at *12.[1]

Defendants' second argument is aimed at the merits of plaintiffs' claim. When evaluating a motion for class certification, the court accepts the allegations made in support of certification as true and does not examine the merits of the case. *Hardin*, 814 F. Supp. at 706 (citing, *inter alia*, *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S. Ct. 2140, 40 L. Ed.

---

[1] A disabled individual who presently is not capable of living in the community will obviously suffer less injury from the lack of a regimented community placement procedure than a disabled individual who, given proper support, could immediately be transferred. Where it is the defendants' standardized conduct that is at issue, however, the court does not require that putative class members all suffer the same injury. *Ligas*, 2006 U.S. Dist. LEXIS 10856, at *11 (citing *Rosario*, 963 F.2d at 1018).

2d 732 (1974)). The court will not merely rubber stamp the movant's allegations, however, but will look beneath the surface of the pleadings and independently examine the evidence in order to protect absent class members by ensuring that the requirements of Rule 23 are satisfied. *Gen. Tel. Co. of Southwest* v. *Falcon*, 457 U.S. 147, 157, 160–61, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982); *Szabo* v. *Bridgeport Mach., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). Even if the court grants a motion for class certification, that ruling is "inherently tentative," *Falcon*, 457 U.S. at 160, and the court retains the freedom to modify it in light of subsequent developments in the litigation. Fed. R. Civ. P. 23(c)(1)(C).

Defendants have submitted Exhibits A through G, a collection of documents tracking the medical histories of the plaintiffs, and argue that these documents show not only the varying factual differences between plaintiffs' claims, but also that plaintiffs are being regularly evaluated for progress towards discharge. Based on this evidence, defendants ask the court to "infer that the named Plaintiffs have not been damaged as alleged." Defs.' Resp. at 10. Plaintiffs respond, and this court agrees, that the defendants are attempting to use the commonality criterion of Rule 23(a) to get at the merits of plaintiffs' case. While the evidence submitted by defendants does show that the nursing facilities are conducting *some* assessments of plaintiffs' progress, it is far from obvious that these assessments include determinations of eligibility for community placement, and it is unclear that a medical professional has evaluated each plaintiff for that specific purpose. Absent clear proof that plaintiffs' claims are without merit, the court, in ruling on this motion for class certification, declines to "infer" that plaintiffs will ultimately be unsuccessful. *See Fields*, 2004 WL 1879997, at *7 ("While defendant has submitted evidence it contends supports the conclusion that it does not have a policy which

discriminates against disabled nursing home residents . . . the Court's role in deciding a motion for class certification does not involve deciding the ultimate merits of plaintiff's claim."); *Williams*, 2006 U.S. Dist. LEXIS 83537, at *10 (holding it inappropriate for the court to consider medical records of mentally ill individuals absent expert testimony).

The evidence submitted by defendants does not alter the court's determination that the proposed class challenges the defendants' policies and practices regarding community placement, nor does it negate the common questions of law and fact arising from such standardized conduct by the defendants. Accordingly, the court finds that the proposed class meets the commonality requirement.

### 3. Typicality

To meet the typicality requirement, the named plaintiffs' claims or defenses must be typical of the class. Fed. R. Civ. P. 23(a)(3); *Keele*, 149 F.3d at 594. The typicality requirement focuses on the class representative: "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (internal quotation marks and citations omitted); *De La Fuente* v. *Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (internal quotation marks and citations omitted). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar* v. *Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Factual distinctions between the named plaintiff's claims and those of other class members do not necessarily undermine typicality. *De La Fuente*, 713 F.2d at 232; *Robbins* v. *Wolpoff & Abramson LLP*, No. 05-C-0315, 2006 WL 2473334, at *2 (E.D. Wis. Aug. 24,

2006). Because "commonality and typicality are closely related, a finding of one often results in a finding of the other." *McKenzie* v. *City of Chicago*, 175 F.R.D. 280, 286 (N.D. Ill. 1997).

Defendants first argue that the claims of the named plaintiffs are not typical of the class because a showing that the named plaintiffs are entitled to relief would not necessarily prove the claims of all class members. Defendants contend, for example, that the proposed class includes "individuals who have moved to the community as well as those . . . who may not be ready for discharge" from nursing facilities. Defs.' Resp. at 13. Regardless of such factual differences, however, the claims of the named plaintiffs share the same "essential characteristics" as the claims of proposed class members. *See Retired Chicago Police Ass'n* v. *City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993) (noting that factual differences may exist between the claims of named plaintiffs and proposed class members in a typicality analysis as long as they share the same "essential characteristics"). Like the class members, the named plaintiffs have an interest in requiring the defendants to establish a *policy* of informing them about the option of community placement and providing community placement to those who are eligible. *See Ligas*, 2006 U.S. Dist. LEXIS 10856, at *13. This interest exists regardless of whether or not a given individual is ultimately determined to be able to live in the community. That some individuals have managed to move out of nursing facilities under the current community placement regime likewise does not lead to the conclusion that the claims of these plaintiffs are not typical of the class. "It is more likely that the 'satisfied' class members suffered less injury than other class members, not that they suffered no injury" at all. *Rosario*, 963 F.2d at 1018 (holding that two class members who were satisfied with the beauty school training they had received nevertheless had claims

typical of the class against allegedly fraudulent beauty school operator). Proving the claims of the named plaintiffs would, therefore, entitle all class members to the relief sought.

Second, defendants argue that class certification is inappropriate because one named plaintiff, Ernest Reeves, has been moved from a nursing facility into the community, rendering his claim moot. *See* Defs.' Resp. at 12 & n.5. This line of reasoning is unpersuasive, however, in light of the fact that Reeves was, according to defendants, discharged from his nursing facility on October 15, 2007, well after plaintiffs filed their motion for class certification on August 30, 2007. *See Fields*, 2004 WL 1879997, at *8 (holding that when a governmental defendant provides a benefit to a plaintiff after a motion for class certification is filed, class certification should be seen as "relating back" to the outset of the suit with the effect that issues such as class membership "are addressed in terms of the circumstances that existed at that time the complaint or the motion for class certification [was] filed"). Furthermore, even if Mr. Reeves' claims were mooted, four adequate class representatives whose claims are not moot remain. *See Robinson* v. *Sheriff of Cook County*, 167 F.3d 1155, 1157–58 (7th Cir. 1999) (suitability of new class representative must be determined independently of former proposed class representative found to be inadequate). Additionally, even if all named plaintiffs are later disqualified by evidence revealed at summary judgment or trial, appropriate class members could potentially be substituted in their place. *See id.*

Defendants' third argument challenging typicality asserts that the proposed class, limited as it is to Medicaid-eligible adults in Cook County, leaves "residents in other counties . . . to their own devices to pursue alleged relief in other districts or possibly no relief what so ever." Defs.' Resp. at 13. It is unclear, however, how having a class definition that is limited in terms

of its geographic scope prevents the named plaintiffs from having claims typical of the class. The defendants fail to cite any authority for the proposition that in order to satisfy typicality a plaintiff's class definition must include all possible individuals who may be entitled to the relief sought. Far from persuading the court that the "limited" nature of the class is indicative of its failure to meet the typicality requirement, defendants' reasoning suggests the opposite—that the claims of the named plaintiffs' are typical not only of the proposed class, but of a much broader class as well. In any event, the court need not go so far. It suffices that the class actually proposed here satisfies the typicality requirement.

### 4. Adequacy

To meet Rule 23's adequacy of representation requirement, "the representative must be able to 'fairly and adequately protect the interests of the class.'" *Keele*, 149 F.3d at 594 (quoting Fed. R. Civ. P. 23(a)(4)). Under Rule 23(a)(4), the adequacy of representation determination "is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (quoting *Secretary of Labor* v. *Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario*, 963 F.2d at 1018 (citation omitted).

Defendants do not dispute that competent attorneys represent the proposed class in this case. Plaintiffs' counsel has litigated numerous class actions, and no reason has been brought to the court's attention suggesting that counsel is unable to adequately represent the proposed class here.

Defendants do, however, contest the ability of the class representatives to adequately protect the interests of all class members. Defendants argue that because the class definition includes persons who may oppose community placement, "the proposed class creates antagonism between those named Plaintiffs who want to move from nursing facilities to community settings, and potential class members who do not want or lack the support to move from their current placements." Defs.' Resp. at 14. The court finds this argument to be without merit. Nothing in the relief sought by plaintiffs suggests individuals opposed to community placement will be forced to move. The relief requested requires only that proper evaluations be offered and conducted and that appropriate services be made available to those qualifying for community placement. "A decision to consent to the recommended placement need not be made until after an appropriate evaluation is performed and the individual knows what type of placement is being recommended." *Williams*, 2006 U.S. Dist. LEXIS 83537, at *14. Accordingly, the court finds that no antagonism exists between class members. The plaintiffs are therefore found to be adequate class representatives.

For the foregoing reasons, the court concludes that plaintiffs' proposed class satisfies all four requirements of Rule 23(a).

## C. Rule 23(b)(2)

Rule 23(b)(2) provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This rule is generally "invoked in cases where injunctive or declaratory relief is the primary or exclusive relief sought." *Byucks-Robertson* v. *Citibank Fed.*

*Sav. Bank*, 162 F.R.D. 322, 335 (N.D. Ill. 1995); *see also Doe* v. *Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D. Ill. 1992) ("[T]he primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members.").

While defendants summarily deny that their conduct is generally applicable to the class as whole, their argument once again focuses improperly on the merits of plaintiffs' case. Defendants argue that their exhibits clearly show that "the named Plaintiffs are evaluated and assessed; they are aware of the opportunity to return to the community; they are given assistance to find living arrangements in the community; and some in fact, have been placed in the community where they are provided services." Defs.' Resp. at 15. Thus, defendants argue, they have not acted on grounds generally applicable to the class. As discussed above, however, the evidence submitted by defendants fails to establish that they have a policy of regularly assessing plaintiffs *for placement in the community*.

Plaintiffs allege that defendants' practices and policies systematically deny class members the opportunity to be informed about their treatment options and to move from nursing facilities into the community. The court finds that plaintiffs' pattern-or-practice allegations sufficiently allege that defendants have acted on grounds generally applicable to the proposed class. *See Wallace*, 224 F.R.D. at 431 (holding that plaintiffs' theory that the Chicago Housing Authority engaged in a pattern of discriminatory behavior satisfied the requirement of Rule 23(b)(2)). The court thus concludes that the proposed class falls within the ambit of Rule 23(b)(2) and is appropriate for certification.

**CONCLUSION AND ORDER**

For the reasons set forth above, the court grants plaintiffs' motion [#9] and certifies the following class: "all Medicaid-eligible adults with disabilities in Cook County, Illinois, who are being, or may in the future be, unnecessarily confined to nursing facilities and who, with appropriate supports and services, may be able to live in a community setting."


Dated:  September 29, 2008         Enter: _____
                                          JOAN HUMPHREY LEFKOW
                                          United States District Judge