IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LENIL COLBERT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07 C 4737 |
| v. | ) | |
| | ) | Judge Joan Humphrey Lefkow |
| | ) | Magistrate Judge Maria Valdez |
| PAT QUINN, et al., | ) | |
| Defendants. | | |

## ORDER

This matter is before the Court on the Joint Motion for Approval of Consent Decree. Having reviewed the Motion and supporting Memorandum, and having conducted a fairness hearing pursuant to Rule 23 (e) of the Federal Rules of Civil Procedure, and being otherwise fully advised;

IT IS HEREBY ORDERED:

The Court finds that reasonable notice of the proposed Consent Decree of today's fairness hearing has been provided to all class members and potential class members in accordance with due process and governing law. Having considered all written submissions and the presentation made in open court, the Court finds the proposed Consent Decree to be a fair, reasonable and adequate resolution of this class action litigation, made at arm's length between the parties and taking into account the benefits of the litigation to the Plaintiffs as compared with the benefits offered by the proposed Consent Decree, the resources available to the State, the Court The court hereby approves the proposed Consent Decree pursuant to Federal Rule of Civil Procedure 23.

Entered: 12/21, 2011

Honorable Joan Humphrey Lefkow
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LENIL COLBERT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07 C 4737 |
| v. | ) | |
| | ) | Judge Joan Humphrey Lefkow |
| | ) | Magistrate Judge Maria Valdez |
| PAT QUINN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**CONSENT DECREE**

---

# TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ...................................................................... 1

DECREE .................................................................................................................. 2

I.      JURISDICTION ............................................................................................. 2

II.     PURPOSE ..................................................................................................... 2

III.    CLASS DEFINITION ................................................................................... 2

IV.   DEFINITION OF TERMS ........................................................................... 2

V.     THE DISABILITY SERVICES SYSTEM .................................................. 13

VI.   EVALUATIONS AND SERVICE PLANS ................................................. 13

VII.   OUTREACH ............................................................................................... 21

VIII.  IMPLEMENTATION ................................................................................ 21

IX.   MONITORING AND COMPLIANCE ...................................................... 24

X.     CLASS REPRESENTATIVES ................................................................... 27

XI.   ATTORNEYS' FEES AND COSTS ........................................................... 27

XII.   MISCELLANEOUS PROVISIONS ........................................................... 28

## INTRODUCTION AND BACKGROUND

Plaintiffs,[1] a class of Illinois residents with disabilities living in Nursing Facilities in Cook County, Illinois, filed this lawsuit on August 22, 2007, seeking declaratory and injunctive relief to redress alleged violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-32, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and the Social Security Act, 42 U.S.C. §§ 1396-1396v (SSA). Plaintiffs allege that they are unnecessarily segregated and institutionalized in Nursing Facilities and forced to live with numerous other people with disabilities in violation of the ADA and the Rehabilitation Act, which require Illinois to administer services in the most integrated appropriate setting.

Plaintiffs allege that Defendants have denied them the opportunity to live in appropriate integrated settings where they could lead more independent and more productive lives in their own communities. Plaintiffs seek injunctive relief requiring that Defendants (1) inform Plaintiffs as to their eligibility for Community-Based Services and their choice of such services; (2) provide comprehensive evaluations to determine the eligibility of Plaintiffs for Community-Based Services, both prior to and after admission to Nursing Facilities; and (3) provide, as appropriate, Plaintiffs with services and supports in the Community-Based Setting and refrain from providing services only in institutional settings. Defendants deny liability and specifically deny that they have violated the ADA, the Rehabilitation Act, or the SSA.

Therefore, upon all of the foregoing, and the Court being otherwise fully advised, the Court hereby ORDERS, ADJUDGES and DECREES as follows:

---

[1] Capitalized terms set forth herein are defined in Section IV, "Definition of Terms." All other terms will have the meaning ordinarily attributed to them.

# DECREE

## I.     JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## II.     PURPOSE

This Consent Decree shall assure that Defendants provide Plaintiffs and Class Members with the opportunity to receive the full array of supports and services they need in the most integrated settings appropriate to their needs, including Community-Based Settings, and to promote the development of integrated settings that attempt to maximize individuals' independence, choice, opportunities to develop and use independent living skills, and that attempt to afford them the opportunity to live their lives similar to individuals without disabilities.

## III.     CLASS DEFINITION

On September 29, 2008, the Court certified a class of all Medicaid-eligible adults with disabilities, who are being, or may in the future be, unnecessarily confined to Nursing Facilities located in Cook County, Illinois, and who with appropriate supports and services may be able to live in a Community-Based Setting.[2]

## IV.     DEFINITION OF TERMS

A.     As used herein, the following terms have the following meanings:

---

[2]     Although there are Class Members of different ages, Class Members are members of the class not by virtue of their age but by virtue of having either a physical disability or a Mental Illness. Under the State's current service delivery system, such Class Members might be served under different programs administered by different agencies, based in part on age. The relief to which a Class Member is entitled will be determined by a Class Member's needs, qualified by the fact that Class Members may be served under different programs.

1. "Approval Date" means the date on which the Court enters this Consent Decree.

2. "Class Counsel" means SNR Denton US LLP, Access Living of Metropolitan Chicago, Equip for Equality, the Roger Baldwin Foundation of ACLU, Inc., and the Law Offices of Stephen F. Gold.

3. "Class" and "Class Members" mean the persons who meet the definition set forth in Section III, above, and Section IV.A. 3 or 4 below.

4. "Class Members with Mental Illness" are those Class Members who have a primary diagnosis of Mental Illness as defined herein.

5. "Class Members with Physical Disabilities" are those Class Members who have a disability as defined in the ADA, the Rehabilitation Act or the SSA other than a Mental Illness or a developmental disability.

6. "Class Representatives" means Lenil Colbert, Ernest Reeves and Kenya Lyles.

7. "Community-Based Services" means those services provided to a person living in a Community-Based Setting under the Illinois Medicaid State Plan, services provided under any applicable HCBS Waiver, services described in the Medicaid Community Mental Health Services Program administered by the Illinois Department of Human Services' Division of Mental Health and authorized pursuant to 59 Ill. Adm. Code Part 132 (hereafter referenced as Rule 132) in effect as of the Approval Date, including any subsequent amendments thereto, services listed in the State of Illinois Community Mental Health Services Reimbursement Guide or services provided pursuant to any other similar government programs.

8.   "Community-Based Setting" means the most integrated setting appropriate to promote a Class Member's independence in daily living and ability to interact with persons without disabilities to the fullest extent possible. A Community-Based Setting may include, as is appropriate to the Class Member, a Private Residence, a Supportive Living Facility, Permanent Supportive Housing, or other appropriate supported or supervised residential settings that are specifically chosen by the Class Member or where the Class Member has one of the conditions enumerated in Section VI(D)(3) below.

9.   "Cost Neutral Plan" means the plan developed by the Parties and Monitor as provided in Section VI.C 4 and 5 herein. The Cost Neutral Plan must include agreed upon time periods during which Defendants will transition Class Members to Community-Based Settings such that, based on the criteria described herein and set forth in more detail in the plan, the transitions of Class Members cost the same or less to the State in the aggregate as if those Class Members instead had remained in Nursing Facilities. For purposes of the Cost Neutral Plan, data and other information regarding costs shall be collected and analyzed as follows:

a)   The Parties first shall calculate, for each transitioned Class Member, the State's total annualized cost for the Class Member's previous year's stay in the Nursing Facility and the total annualized cost for the Class Member's other Medicaid eligible expenses and shall then subtract all items that reduce the State's cost, including the Class Member's contributions, if any,

from Social Security, SSDI, pension or other sources, and any Federal Medicaid match. For example, the State's total annual cost of $46,000, minus a Class Member's contribution of $7,560 ($630/month) equals $38,440, minus the standard fifty percent (50%) Medicaid match of $19,220 equals the State's net annual cost of $19,220.

b) The Parties shall track each Class Member who is transitioned to a Community-Based Setting and determine the State's net annual cost for each Class Member by: (i) adding up the State's total annual payments to the community provider(s) and other Medicaid eligible expenses for the Class Member, (ii) adding an agreed-upon amortized portion of the Transition Costs or other one-time costs paid to or on behalf of the Class Member, (iii) adding an agreed-upon amortized portion of any additional agreed-upon administrative or collateral costs incurred by the State as a result of implementation of this Decree (e.g., hiring Evaluators; costs directly related to persons choosing to enter Nursing Facilities who, but for this Decree, would not have done so; actual investment of capital for development of Community-Based Settings used by Class Members), (iv) adding Housing Assistance, and then (v) subtracting the Federal Medicaid match. For example, a total annual payment of $14,000 to community providers and medical care providers, plus $1,000 for the amortized portion of Transition Costs or other one-time costs

eligible for federal match, plus $1,000 as the amortized portion of State costs not eligible for federal match (e.g., administrative and collateral costs), plus Housing Assistance of $8,400 equals $24,400, minus a Medicaid match of $7,500 equals the State's net annual cost of $16,900 and a net annual savings of $2,320.

c)     The Parties shall aggregate the cost differential for all Class Members transitioned in the first 24 months following the finalization of the Implementation Plan; provided, however, that the Parties may agree to also use the data from the six months following the first 24 months and any other information relevant to projecting future costs.

10.     "Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

11.     "Decree" means this Consent Decree.

12.     "Defendants" means the current or any future Governor of the State of Illinois, Secretary of the Illinois Department of Human Services, Director of the Illinois Department of Public Health, Director of the Illinois Department on Aging, and Director of the Illinois Department of Healthcare and Family Services including any head of any successor to the departments listed herein.

13.     "Evaluation" means an assessment for Class Members, provided by a Qualified Professional, who is appropriate for the respective disability population, to determine a Class Member's level of need and/or eligibility for services and to determine the services appropriate for that Class

Member, including the services needed to reside in a Community-Based Setting.

14. "Home and Community-Based Services Waiver (HCBS Waiver)" means a federally approved waiver program under which services are offered as an alternative to institutional care for individuals who meet the requirements of the HCBS Waiver.

15. "Home Accessibility Adaptation Costs" mean, as determined in the Service Plan development process, the one-time payment of allowable expenses necessary to make a Community-Based Setting accessible for a Class Member; provided, however, that Home Accessibility Adaptation Costs shall not exceed $5,000 per Class Member.

16. "Housing Assistance" means, as determined in the Service Plan development process, the financial assistance for housing that is necessary to make it possible, if provided together with the Community-Based Services and any Transition Costs and Home Accessibility Adaptation Costs identified in the Service Plan, for the Class Member to transition from a Nursing Facility to a Community-Based Setting, subject to the following limitations: (1) that the Class Member has been a resident of a Nursing Facility for at least 6 consecutive months, including any temporary stay in a hospital or other long-term care facility, as of the date of the Class Member's first Evaluation; (2) that the Class Member will apply as soon as practicable for a federal Section 8 housing voucher or other similar housing rental subsidy; (3) that, once an adequate housing voucher or subsidy is received by the Class Member, the Housing

Assistance will terminate; (4) the total Housing Assistance provided to each eligible Class Member shall be calculated as follows: the monetary difference between the actual rent paid by the Class Member or the Fair Market Rent (FMR), as defined by the United States Department of Housing and Urban Development and found at www.huduser. org/portal/datasets/fmr/fmrs/FY2011code/2011summary.odn, as amended, whichever is lower, less any government-funded housing subsidy, and 30 percent of the Class Member's Income;[22] and (5) consistent with Defendants' obligations in Sections V and VI to provide services, support resources and the benchmarks set forth in Section VI(C), the total Housing Assistance provided to eligible Class Members shall be no more than $1,330,000 in the first year following the finalization of the Implementation Plan, no more than $4,680,000 in the second year following the finalization of the Implementation Plan (including for transitions occurring in the first year), no more than $3,990,000 in months 25-30 following the finalization of the Implementation Plan (including for transitions occurring in the first and second years), with aggregate Housing Assistance maximums determined thereafter as part of the

---

[22]     For example, if a Class Member is paying actual rent of $900.00 per month, the FMR is $800.00 per month, the Class Member has Income of $600.00 per month and is receiving another rent subsidy of $100.00 per month, then the Housing Assistance would be $520.00 per month, calculated as $800 – $100 = $700 – $180 [.3 x $600] = $520.  As another example, if a Class Member with $600.00 per month Income and no other rent subsidy is living with a relative and paying half of the actual rent of $1,100.00 per month, and the FMR is $1,100.00, then Housing Assistance would be $330.00 per month, calculated as $550 – $180 [.3 x $600] = $330.

development of the Cost Neutral Plan, as described in Section VI.C.4 and 5 herein.

17.    "Illinois Medicaid State Plan" or "State Plan" means the plan that was submitted by the State of Illinois to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, in accordance with Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v, in effect as of the date of the Approval of the Decree, including any subsequent amendments thereto.

18.    "Income" shall mean all monies classified as Adjusted Gross Income in the Internal Revenue Code, including, but not limited to, earnings, private or public pensions, self employment social security benefits, SSI benefits, dividends, interest, capital gains, rents and federal and earned income credits.

19.    "Implementation Plan" means the plan set forth below in Section VIII.

20.    "Mental Illness" means serious mental illness as defined in 77 Illinois Administrative Code, Chapter I, Section 300.4000.

21.    "Monitor" means the person or entity appointed by the Court pursuant to Section IX hereof to perform the functions more fully described therein.

22.    "Nursing Facility" means a long term care facility licensed by the Illinois Department of Public Health under 77 Ill. Admin. Code 300, where the license authorizes the facility to provide, for one or more beds, skilled nursing level of care to its residents, where "skilled nursing level of care" means the provision of skilled nursing care, continuous skilled nursing

observations, restorative nursing, and other services under professional direction with frequent medical supervision; provided, however, that a Nursing Facility does not include a privately owned long-term care facility classified as an Institution for Mental Diseases (IMD) for purposes of eligibility for Federal Medicaid matching funds.

23. "Parties" means Plaintiffs and Defendants, collectively.

24. "Permanent Supportive Housing" or "PSH" refers to integrated permanent housing, with tenancy rights, linked with flexible Community-Based Services that are available to consumers when they need them, but are not mandated as a condition of tenancy. For purposes of this Decree, PSH includes scattered-site housing as well as apartments clustered in a single building.

25. "Person-Centered" means a planning process designed to empower Class Members to make plans for their future according to their needs and desires, with the support of their legal guardians, family, friends, or service providers as appropriate. For Class Members with Mental Illness, "Person Centered" means a process based on a model of recovery.

26. "Plaintiffs" means all Class Members.

27. "Pre-Admission Screening and Resident Review (PASRR) Agency" means any entity that provides assessments for Class Members with Mental Illness, and that (i) contracts with the State to perform, in conformance with federal screening requirements, pre-admission screening and resident reviews on persons with Mental Illness who may

be placed or currently reside in a Nursing Facility, and (ii) as a condition of its contract with the State, has received sufficient training and/or has sufficient experience providing services to demonstrate a comprehensive understanding of the available Community-Based Settings, including Permanent Supportive Housing, and Community-Based Services, Transition Costs and Housing Assistance.

28.  "Pre-Admission Screening" means an assessment for Class Members, conducted by a Qualified Professional, with the input of the Class Member, to determine a Class Member's need for long-term care and the appropriate level of care, and a Class Member's desire to receive Community-Based Services or placement in a Community-Based Setting.

29.  "Private Residence" means a house, apartment, condominium, townhouse or any housing structure that may or may not be shared with family or friends. A Private Residence may not be an IMD, a Nursing Facility, a group home or any supervised or supported setting.

30.  "Qualified Professional" means a person, including an employee of a PASRR Agency, who (a) is not employed by or an agent of a Nursing Facility, a hospital or other long-term care facility that also provides housing; (b) may be employed by a governmental body so long as the collective group of Qualified Professionals includes a substantial number of persons not employed by any Defendant agency; and (c) is certified or approved by the Defendants as appropriately licensed, skilled, trained and qualified to conduct Evaluations.

31. "Service Plan" means a Person-Centered plan with the goal of moving a Class Member to a Community-Based Setting, strategies to be employed to achieve that goal and a description of all Community-Based Services, Transition Costs, Home Accessibility Adaptation Costs and/or Housing Assistance necessary to support that goal.

32. "State" means the State of Illinois.

33. "Supportive Living Facility" or "SLF" means a residential setting meeting the requirements of Subpart B, 89 Ill. Admin. Code 146.205.

34. "Transition Costs" mean the one-time payment of allowable expenses necessary to accomplish the transition of a Class Member from a Nursing Facility to a Community-Based Setting, limited to those expenses that are necessary to enable a person to establish a basic household that do not constitute room and board, including: (a) security deposits (including first month rent payments if so included by a landlord in advance "deposits"), move-in application or other fees that are required to obtain a lease on an apartment or home; (b) essential household furnishings and moving expenses required to occupy and use a community domicile, including furniture, window coverings, food preparation items, and bed/bath linens; (c) set-up fees or deposits for utility or services access, including telephone, electricity, heating and water; (d) services necessary for the person's health and safety, such as pest eradication and one-time cleaning prior to occupancy; and (e) first month's food needs. Expenditures listed herein as allowable Transition Costs will be approved only to the extent

that they are reasonable and necessary as determined through the Service

Plan development process, and are clearly identified in the Service Plan,

and only to the extent that the Class Member cannot pay for such

Transition Costs or obtain the allowable item or services identified in this

subparagraph from other sources.  Transition Costs do not include

monthly rental or mortgage expense; food (after the first month); regular

utility charges; previously incurred debts and arrearages; and/or household

appliances or items that are intended for purely diversional/recreational

purposes.  Transition Costs shall not exceed $4,000 for the lifetime of any

Class Member.

## V.    THE DISABILITY SERVICES SYSTEM

Development of Community Capacity.  Defendants shall develop and implement

necessary and sufficient measures, services, supports and other resources, such as having service

providers available for and able to locate affordable housing, to arrange for transition into

Community-Based Settings, and to assist Class Members with accessing Community-Based

Services, consistent with the choices of Class Members, to ensure that the Defendants will meet

their obligations under the Decree and the Implementation Plan.  Nothing in this Consent Decree

shall reduce, impair or infringe on any rights or entitlements of any Class Members in any State

program or in any Medicaid program.

## VI.   EVALUATIONS AND SERVICE PLANS

### A.    Evaluations.

1.    Each Class Member is eligible for an Evaluation to determine what

Community-Based Services are required for the Class Member to

transition to a Community-Based Setting. Within 180 days following the finalization of the Implementation Plan, at least 500 Class Members then residing in a Nursing Facility shall receive an Evaluation by a Qualified Professional.

2.     Within eighteen months following the finalization of the Implementation Plan, a total of at least 2,000 Class Members then residing in a Nursing Facility shall have received an Evaluation by a Qualified Professional.

3.     Subject to approval of and consistent with the Cost Neutral Plan, every Class Member then residing in a Nursing Facility shall receive an Evaluation by a Qualified Professional within the time period determined as part of the development of the Cost Neutral Plan.

4.     The Qualified Professionals shall inform each Class Member during the Evaluations about the existence, nature and availability of Community-Based Settings and shall describe the Community-Based Services, Transition Costs and/or Housing Assistance that may be available to Class Members in those settings.

5.     Evaluations shall be done in a timely manner so as not to delay, where applicable, the development of a Class Member's Service Plan.

6.     Any Class Member who disputes a decision regarding eligibility for, or approval of, Community-Based Services, Transition Costs and/or Housing Assistance or placement in a Community-Based Setting shall, pursuant to governing law, have the right to appeal through administrative review of such decisions through Defendants' existing Fair Hearings process (as set

forth in 89 Ill.Adm.Code Parts 102 and 104) or as otherwise provided by law.  Class Members also may avail themselves of any informal review or appeal process that currently exists.

7. Subject to approval of and consistent with the Cost Neutral Plan, beginning four years following the Approval Date, the Evaluations for every Class Member then residing in a Nursing Facility shall be conducted at least annually, except for Class Members who decline to receive Evaluations and for Class Members who have been determined by a medical doctor to have a condition such as severe dementia or other clinically significant and progressive cognitive disorders and are unlikely to improve.  For those Class Members who have been offered a Community-Based Setting but have opposed moving from a Nursing Facility to a Community-Based Setting, the reasons for the Class Member's opposition shall be fully explored and appropriately addressed as part of the Class Member's annual Evaluation and as described in Section VII herein.  Any Class Member who has received an Evaluation but has declined to move to a Community-Based Setting may thereafter request to be re-Evaluated for transition to a Community-Based Setting. Any such re-Evaluation must be conducted within 120 days of the request.

8. With respect to Evaluations and re-Evaluations described in this Section VI.A, any Class Member has the right to decline to take part in an Evaluation or re-Evaluation.  A Class Member declining an Evaluation or

re-Evaluation shall have the right to receive an Evaluation or re-Evaluation within 120 days of making a new request.

B.    **Service Plans.**

1.    Pursuant to the Evaluations and with a Class Member's input, Defendants shall develop, within 90 days after each Evaluation, Service Plans specific to each Class Member. For those Class Members whose Service Plans include transitioning to a Community-Based Setting, each Service Plan shall set forth with specificity the Community-Based Services, Transition Costs, Home Accessibility Adaptation Costs and/or Housing Assistance the Class Member needs in a Community-Based Setting, including a projected timetable to complete the transition. Each Service Plan shall be updated at least every 180 days to reflect any changes in needs and preferences of the Class Member, including his or her desire to move to a Community-Based Setting after declining to do so, and shall incorporate, where appropriate, services to assist in acquisition of basic activities of daily living skills and illness self-management.

2.    If there has been a determination that a Class Member will be transitioning to PSH, the PSH options offered must include one or more appropriate buildings in which fewer than 25 percent of the building's units are occupied by persons known by the Defendants to have disabilities.

3.    If there is a determination that a Class Member will not be transitioning to PSH or Private Residence (except for those Class Members who have

declined transitions), the Service Plan shall specify what services the Class Member needs that could not be provided in PSH or a Private Residence and shall describe the Community-Based Services the Class Member needs to live in another Community-Based Setting that is the most integrated setting appropriate to that Class Member's needs and preferences or shall specify what services the Class Member needs that cannot be provided in any Community-Based Setting.

4. The Service Plan shall be developed by a Qualified Professional in conjunction with the Class Member and/or his or her legal representative, if any.

5. Each Service Plan shall focus on the Class Member's personal vision, preferences, strengths and needs in home, community and work environments.

## C. Benchmarks for Transitions for Individuals Residing in Nursing Facilities.

1. By the end of the first year following the finalization of the Implementation Plan, Defendants will have moved to a Community-Based Setting 300 Class Members who desire to live in Community-Based Settings and who have received an Evaluation and a Service Plan.

2. By the end of the second year following the finalization of the Implementation Plan, Defendants will have moved to a Community-Based Setting 800 Class Members who desire to live in Community-Based Settings and who have received an Evaluation and a Service Plan.

3.    By the end of the thirtieth month following the finalization of the Implementation Plan, Defendants will have moved to a Community-Based Setting 1,100 Class Members who desire to live in Community-Based Settings and who have received an Evaluation and a Service Plan.

4.    Not later than thirty months after the finalization of the Implementation Plan, the Defendants, Monitor and Counsel for Class Plaintiffs shall agree on a Cost Neutral Plan to move to Community-Based Settings at a reasonable pace all Class Members who desire to live in Community-Based Settings. However, if the Defendants, Monitor and Counsel for Class Plaintiffs jointly determine, based on an analysis of the data and other information regarding the cost of moving the first 800 to 1,100 Class Members, that no remaining Class Member can be moved in a cost neutral manner, then the Parties will file a joint motion to terminate the Decree. If the Parties cannot agree that a Cost Neutral Plan is feasible, then either Party may seek appropriate guidance and relief from the Court.

5.    If the Defendants, Monitor and Counsel for Class Plaintiffs are unable, for any reason, to agree on a Cost-Neutral Plan as described above at the 30th month after finalization of the Implementation Plan, Defendants and Counsel for Class Plaintiffs shall each file a proposed Cost Neutral Plan with the Court not later than 31 months after finalization of the Implementation Plan. The Court will set appropriate schedules and proceedings to determine the Cost Neutral Plan to be effected.

6.     Subject to the approval of and consistent with the Cost Neutral Plan described above, by the end of the third year following the finalization of the Implementation Plan, Defendants shall have created a Community Transition Schedule that lists all Class Members living in Nursing Facilities as of that date who do not oppose moving to a Community-Based Setting. Defendants shall ensure that Class Members listed on the Community Transition Schedule will move to appropriate Community-Based Settings at a reasonable pace, with selection prioritized by the Class Member's urgency of need for Community-Based Services or placement in a Community-Based Setting, the length of time that has passed since the Class Member was placed on the Community Transition Schedule, geographical considerations and other appropriate factors. The Defendants shall identify or develop sufficient numbers of appropriate Community-Based Settings so that Class Members placed on the Community Transition Schedule will be able to move to appropriate Community-Based Settings as quickly as possible consistent with the Cost Neutral Plan.

D.     **Community-Based Settings and Community-Based Services.**

1.     Defendants shall ensure that Class Members who move to a Community-Based Setting have access to all appropriate Community-Based Services, Transition Costs, Home Accessibility Adaptation Costs and/or Housing Assistance specified in their Service Plans, and shall take appropriate measures to keep their housing available in the event that they are placed

in a hospital, Nursing Facility or other treatment facility for up to 60 consecutive days.

2.   Defendants shall take all necessary and reasonable measures to protect Class Members from being pressured not to consider appropriate alternatives to Nursing Facilities or from being subjected to retaliation in any form by Nursing Facilities for seeking alternatives to Nursing Facilities.

3.   For Class Members with Mental Illness, PSH or the Private Residence chosen by the Class Member shall be considered the most integrated Community-Based Setting appropriate except that for any Class Members with Mental Illness (i) who have been determined by a physician not affiliated with a Nursing Facility to have a condition such as severe dementia or other severe cognitive impairments requiring such a high level of staffing to assist with activities of daily living or self-care management that they cannot effectively be served in PSH or a Private Residence, (ii) who have medical needs requiring such a high level of skilled nursing care that they cannot effectively be served in PSH or a Private Residence, or (iii) who present an imminent danger to themselves or others, the Qualified Professional will determine, through the Evaluation process, the most integrated setting appropriate. Those Class Members not transitioning from Nursing Facilities into PSH or a Private Residence shall have periodic re-Evaluations with treatment objectives to prepare them for subsequent transition to the most integrated setting

appropriate, including PSH or a Private Residence, except for Class Members who have chosen other living arrangements or have been determined by a physician not affiliated with a Nursing Facility to have a condition such as severe dementia or other clinically significant and progressive cognitive disorders and are unlikely to improve.

## VII. OUTREACH

Defendants shall ensure that Class Members receive complete and accurate information regarding their rights to live in Community-Based Settings and/or to receive Community-Based Services, Transition Costs, Home Accessibility Adaptation Costs and/or Housing Assistance, and the available options and opportunities for doing so. The Implementation Plan shall describe the method by which such information will be disseminated, the process by which Class Members may request services, and the manner in which Defendants will maintain current records of these requests. Defendants shall also ensure that the Qualified Professionals conducting the Evaluations provide outreach with appropriate frequency to Class Members who express concerns about leaving the Nursing Facilities. The Implementation Plan shall describe methods for providing outreach to Class Members. All costs for outreach shall be borne by Defendants.

## VIII. IMPLEMENTATION

A. **Overview and Contents of the Implementation Plan.**

Defendants, with the input of the Monitor and counsel for Plaintiffs, shall create and implement an Implementation Plan to accomplish the obligations and objectives set forth in the Decree. The Implementation Plan must, at a minimum:

1. Establish specific tasks, timetables, goals, programs, plans, strategies and protocols to assure that Defendants fulfill all of the requirements of the Decree;

2. Describe the hiring, training and supervision of the personnel necessary to implement the Decree;

3. Describe the activities required to support the development and availability of Community-Based Services, Transition Costs, Home Accessibility Adaptation Costs and/or Housing Assistance and Community-Based Settings, including inter-agency agreements, requests for proposals, mechanisms for Housing Assistance, and other actions necessary to implement the Decree;

4. Identify, based on information known at the time the Implementation Plan is finalized and updated on a regular basis, any services or supports anticipated or required in Service Plans developed pursuant to the Decree that are not currently available in the appropriate quantity, quality or geographic location, and might be required to meet the obligations of the Decree;

5. Identify any necessary changes to regulations that govern Nursing Facilities in order to strengthen and clarify requirements for services to Nursing Facility residents and to provide for effective oversight and enforcement of all applicable regulations and laws; and

6. Describe the methods by which Defendants shall ensure compliance with their obligations of this Decree.

B.    Within 180 days of Approval of the Decree, Defendants shall provide the Monitor and Counsel for Class Plaintiffs with a draft Implementation Plan. The Monitor and Counsel for Class Plaintiffs shall participate in developing and finalizing the Implementation Plan, which shall be finalized not later than nine months following the Approval Date. If, after negotiation and comment, the Monitor or Counsel for Class Plaintiffs disagrees with the Defendants' proposed Implementation Plan, the Court shall resolve all disputes and finalize the Implementation Plan.

C.    The Implementation Plan shall be updated and amended at least annually. The Monitor and Counsel for Class Plaintiffs shall review and comment upon any proposed updates or amendments at least 60 days before the effective date of any updates or amendments. In the event the Monitor or Counsel for Class Plaintiffs disagree with the Defendants' proposed updates or amendments, the Monitor or Counsel for Class Plaintiffs shall state all objections in writing at least 30 days before the effective date of any updates or amendments. In the event that Defendants, the Monitor and Counsel for Class Plaintiffs do not agree on updates and amendments, the Court shall resolve any and all disputes before any updates or amendments become effective.

D.    The Implementation Plan, and all amendments or updates thereto, shall be filed with the Court and shall be incorporated into and become enforceable as part of the Decree.

E.    In the event that any Nursing Facility seeks to discharge any Class Member before a Community-Based Setting is available, including, but not limited to,

circumstances in which a Nursing Facility owner decides to close the Nursing Facility, Defendants shall take appropriate and necessary actions to ensure that such Class Members are not left without appropriate housing options based on their preferences, strengths and needs.

## IX.   MONITORING AND COMPLIANCE

### A.   Appointment of a Monitor.

The Court will appoint an independent and impartial Monitor who is knowledgeable concerning the management and oversight of programs, including waiver programs, that serve Individuals with Mental Illness and Physical Disabilities of all ages.  The Parties shall attempt to agree on the selection of a Monitor to propose to the Court.  If the Parties are unable to reach agreement, each party will nominate at least one person to serve as Monitor, and the Court will select the Monitor.  Within 21 days of Approval of the Decree, the Parties shall submit their joint recommendation or separate nominations for a Monitor to the Court.  In the event the Monitor resigns or otherwise becomes unavailable, the process described above will be used to select a replacement.

### B.   Duties and Reporting.

The Monitor's duties include evaluating Defendants' compliance with the Decree, identifying actual and potential areas of non-compliance with the Decree, mediating disputes between the Parties, and bringing issues and recommendations for their resolution to the Court.  The Monitor will file a written report at least annually with the Court and the Parties regarding compliance with the Decree. Such reports shall include the information necessary, in the Monitor's

professional judgment, for the Court and Class Counsel to evaluate Defendants' compliance or non-compliance with the terms of the Decree. Reports of the Monitor shall be filed with the Court and served on all Parties. The Monitor may redact any portions of the Report necessary to make certain confidential matters and information are not disclosed.

C. **Review and Evaluation of Data and Information.**

The Monitor shall review and evaluate Defendants' compliance with the terms of the Decree. Not less than every six months, starting no later than three months after finalization of the Implementation Plan, Defendants shall provide the Monitor and Plaintiffs with a report containing data and information sufficient to evaluate Defendants' compliance with the Decree and Defendants' progress towards achieving compliance, with the Parties and Monitor agreeing in advance of the first report on the data and information that must be included in such report. Defendants will not refuse any request by the Monitor for documents or other information that are reasonably related to the Monitor's review and evaluation of Defendants' compliance with the Decree, and Defendants will, upon reasonable notice, permit confidential interviews of Defendants' staff or consultants, except their attorneys. The Monitor will have access to all Class Members and their records and files, as well as to those service providers, facilities, buildings and premises that serve, or are otherwise pertinent to, Class Members, where such access is reasonably related to the Monitor's review and evaluation of Defendants' compliance with the Decree. The Defendants shall comply with Class Counsel's requests for information that are reasonably related

to Defendants' compliance with the Decree, including without limitation requests for records and other relevant documents pertinent to implementation of the Decree or to Class Members. Class Counsel also shall be permitted to review the information provided to the Monitor. All information provided to the Monitor and/or Class Counsel pursuant to the Decree shall be provided subject to the Protective Order and any applicable HIPAA requirements.

D.  **Compliance**.

In the event the Monitor finds Defendants not in compliance with the Decree, the Monitor shall promptly meet and confer with the Parties in an effort to agree on steps necessary to achieve compliance. In the event that Class Counsel believe that Defendants are not complying with the terms of the Decree, Class Counsel shall notify the Monitor and Defendants of Defendants' potential non-compliance. The Monitor then shall review Plaintiffs' claims of actual or potential non-compliance and, as the Monitor deems appropriate in his or her professional judgment, meet and confer with Defendants and Plaintiffs in an effort to agree on steps necessary to achieve compliance with the Decree. If the Monitor and Parties agree, such steps shall be memorialized in writing and incorporated into, and become enforceable as part of, the Decree. In the event that the Monitor is unable to reach agreement with Defendants and Plaintiffs, the Monitor or either Party may seek appropriate relief from the Court. In the event that Plaintiffs believe that Defendants are not in compliance with the Decree and that the Monitor has not requested appropriate relief from the Court, Plaintiffs may seek

relief from the Court. The Monitor shall not communicate with the Court without advance notice to the Parties.

E. **Compensation of the Monitor.**

The Monitor may hire staff as necessary to fulfill his or her duties under the Decree. Defendants shall compensate the Monitor and his or her staff at their usual and customary rates, so long as the rates are reasonable. Defendants shall reimburse all reasonable expenses of the Monitor and the Monitor's staff, consistent with the guidelines set forth in the "Governor's Travel Control Board Travel Guide for State Employees." After negotiation, comment and a good faith attempt to resolve all differences, Defendants may seek relief from the Court if Defendants believe that any of the Monitor's charges is inappropriate or unreasonable.

## X. CLASS REPRESENTATIVES

A. Within 60 days of Approval of the Decree, Defendants shall offer each of the Class Representatives the opportunity to receive appropriate services in the most integrated setting appropriate to his or her needs. Provision of services to the Class Representatives pursuant to this paragraph shall not be used to determine any other individual's eligibility for services under the terms of the Decree.

## XI. ATTORNEYS' FEES AND COSTS

A. In full settlement of all attorneys' fees and costs incurred in connection with the litigation, Defendants shall pay $1,200,000 to Class Counsel in three equal payments. Defendants shall make the first payment in State Fiscal Year 2012 (which begins July 1, 2011), the second payment in State Fiscal Year 2013

(which begins July 1, 2012), and the third payment in State Fiscal Year 2014

(which begins July 1, 2013).  All of the payments shall be distributed to Class

Counsel in the manner set forth in written instructions provided by Class Counsel.

Furthermore, such amounts shall be set forth in one or more Judgment Orders to

be entered by the Court within 14 days after Approval of the Decree.  Defendants

shall complete and submit all paperwork necessary for the first payment, plus

applicable statutory post-judgment interest, within (a) five business days after

expiration of the time to appeal the Decree without the filing of a Notice of

Appeal, or after the issuance of the mandate by the highest reviewing court,

whichever is later, or (b) April 1, 2012, whichever is later.  Defendants shall

complete and submit all paperwork necessary for the second payment no later

than July 1, 2012 and the paperwork necessary for the third payment, no later than

July 1, 2013.

## XII.  MISCELLANEOUS PROVISIONS

A.  **Approval of the Decree.**  Approval of this Decree shall be deemed to occur on

the date the Court enters the Decree.

B.  **Cost of Notices.**  The cost of all notices hereunder or otherwise ordered by the

Court shall be borne by Defendants.

C.  **Signatories.**  Each undersigned representative of a Defendant to this litigation

and the Attorney General for the State of Illinois certifies that he or she is

authorized to enter into the terms and conditions of the Decree and to execute and

bind legally such Defendant to this document.  Each undersigned representative

of Plaintiffs certifies that he or she is authorized to enter into the terms and

conditions of the Decree and to execute and bind legally the Plaintiffs to this document.

D.   Unless otherwise ordered by the Court, this Decree shall terminate at the earliest of the following: (1) as specified in the Parties' joint motion to terminate the Decree, as provided in Section VI.C.4; or (2) as specified in the Cost Neutral Plan approved by the Court.

SO ORDERED THIS _21st_ DAY OF _December_, 2011.

_Joan H. Lefkow_
United States District Judge

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of *Colbert v. Quinn*, Case No. 07-4737, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

FOR THE CLASS PLAINTIFFS:

Date: _August 26, 2011_ _____ *Stephen D Libowsky*

AS ATTORNEYS FOR CLASS PLAINTIFFS:

Date: _August 26, 2011_ _____ *Stephen d Libowsky*

FOR DEFENDANT, GOVERNOR OF
ILLINOIS:

Date:_____ _____

FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:

Date:_____ _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT ON AGING:

Date:_____ _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:

Date:_____ _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
DEPARTMENT OF PUBLIC HEALTH:

Date:_____ _____

AS ATTORNEY FOR DEFENDANTS:

Date:_____ _____

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of *Colbert v. Quinn*, Case No. 07-4737, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

FOR THE CLASS PLAINTIFFS:

Date:_____    _____

AS ATTORNEYS FOR CLASS PLAINTIFFS:

Date:_____    _____

FOR DEFENDANT, GOVERNOR OF
ILLINOIS:

Date:___*August, 25, 2011*___    ___*Pat Quinn*_____

FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT ON AGING:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
DEPARTMENT OF PUBLIC HEALTH:

Date:_____    _____

AS ATTORNEY FOR DEFENDANTS:

Date:_____    _____

31

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of
*Colbert v. Quinn*, Case No. 07-4737, pending in the United States District Court for the Northern
District of Illinois, Eastern Division.

FOR THE CLASS PLAINTIFFS:

Date:_____    _____

AS ATTORNEYS FOR CLASS PLAINTIFFS:

Date:_____    _____

FOR DEFENDANT, GOVERNOR OF
ILLINOIS:

Date:_____    _____

FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:

Date: *Michelle R.B. Saddler*    *8-19-11*

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT ON AGING:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
DEPARTMENT OF PUBLIC HEALTH:

Date:_____    _____

AS ATTORNEY FOR DEFENDANTS:

Date:_____    _____

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of *Colbert v. Quinn*, Case No. 07-4737, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

FOR THE CLASS PLAINTIFFS:

Date:_____    _____

AS ATTORNEYS FOR CLASS PLAINTIFFS:

Date:_____    _____

FOR DEFENDANT, GOVERNOR OF
ILLINOIS:

Date:_____    _____

FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT ON AGING:

Date: *August 22, 2011*    *Michael Gelder*

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
DEPARTMENT OF PUBLIC HEALTH:

Date:_____    _____

AS ATTORNEY FOR DEFENDANTS:

Date:_____    _____

33

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of *Colbert v. Quinn*, Case No. 07-4737, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

FOR THE CLASS PLAINTIFFS:

Date:_____    _____

AS ATTORNEYS FOR CLASS PLAINTIFFS:

Date:_____    _____

FOR DEFENDANT, GOVERNOR OF
ILLINOIS:

Date:_____    _____

FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT ON AGING:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY

*Julie Hamos*

SERVICES: Date: August 24, 2011

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
DEPARTMENT OF PUBLIC HEALTH:

Date:_____    _____

AS ATTORNEY FOR DEFENDANTS:

Date:_____    _____

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of *Colbert v. Quinn*, Case No. 07-4737, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

FOR THE CLASS PLAINTIFFS:

Date:_____    _____

AS ATTORNEYS FOR CLASS PLAINTIFFS:

Date:_____    _____

FOR DEFENDANT, GOVERNOR OF
ILLINOIS:

Date:_____    _____

FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT ON AGING:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
DEPARTMENT OF PUBLIC HEALTH:
Date: _8/24/11_    _Damon T. Arnold, MD, MPH_

AS ATTORNEY FOR DEFENDANTS:

Date:_____    _____

35

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of *Colbert v. Quinn*, Case No. 07-4737, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

FOR THE CLASS PLAINTIFFS:

Date:_____    _____

AS ATTORNEYS FOR CLASS PLAINTIFFS:

Date:_____    _____

FOR DEFENDANT, GOVERNOR OF
ILLINOIS:

Date:_____    _____

FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT ON AGING:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:

Date:_____    _____

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
DEPARTMENT OF PUBLIC HEALTH:

Date:_____    _____

AS ATTORNEY FOR DEFENDANTS:
Date: *August 26, 2011*    _____

36